# In the United States Court of Federal Claims

**OFFICE OF SPECIAL MASTERS**
No. 21-2043V

|  |  |
|---|---|
| DEBORAH BELKER-FRECHETTE,<br><br>　　　　　　　　　Petitioner,<br><br>v.<br><br>SECRETARY OF HEALTH AND<br>HUMAN SERVICES,<br><br>　　　　　　　　　Respondent. | Chief Special Master Corcoran<br><br>Filed: December 6, 2024 |

*David John Carney*, Green & Schafle LLC, Philadelphia, PA, for Petitioner.

*Sarah Black Rifkin*, U.S. Department of Justice, Washington, DC, for Respondent.

## RULING ON ENTITLEMENT[1]

On October 19, 2021, Deborah Belker-Frechette filed a petition for compensation under the National Vaccine Injury Compensation Program, 42 U.S.C. §300aa-10, *et seq.*[2] (the "Vaccine Act"). Petitioner alleges that she suffered a left shoulder injury related to vaccine administration ("SIRVA"), a defined Table injury, due to an influenza ("flu") vaccine she received on October 5, 2020. Petition at 1, ¶¶ 3, 16.

Respondent disputes Petitioner has established pain onset timing consistent with the requirements of a Table SIRVA. For the reasons discussed below, I find that the onset

---

[1] Because this Ruling contains a reasoned explanation for the action taken in this case, it must be made publicly accessible and will be posted on the United States Court of Federal Claims' website, and/or at https://www.govinfo.gov/app/collection/uscourts/national/cofc, in accordance with the E-Government Act of 2002. 44 U.S.C. § 3501 note (2018) (Federal Management and Promotion of Electronic Government Services). **This means the Ruling will be available to anyone with access to the internet.** In accordance with Vaccine Rule 18(b), Petitioner has 14 days to identify and move to redact medical or other information, the disclosure of which would constitute an unwarranted invasion of privacy. If, upon review, I agree that the identified material fits within this definition, I will redact such material from public access.

[2] National Childhood Vaccine Injury Act of 1986, Pub. L. No. 99-660, 100 Stat. 3755. Hereinafter, for ease of citation, all section references to the Vaccine Act will be to the pertinent subparagraph of 42 U.S.C. § 300aa (2018).

of Petitioner's left shoulder pain occurred within 48 hours of vaccination, and that she has satisfied the other requirements of a compensable Table SIRVA injury. Petitioner is thus entitled to compensation under the Vaccine Act.

## I.     Relevant Procedural History

After several months of records-filing, the case was activated and assigned to the "Special Processing Unit" (OSM's adjudicatory system for resolution of cases deemed likely to settle). ECF No. 13. Because the vaccination record did not indicate the site of administration (Exhibit 1 at 14), I allowed Petitioner the opportunity to present additional situs evidence and briefing. ECF No. 16; *see* Exhibits 10-12, ECF No. 18; Petitioner's Motion for Ruling on the Record Regarding Vaccine Situs, ECF No. 19. On April 6, 2023, I issued a fact ruling determining that the flu vaccine was most likely administered in Petitioner's left deltoid, as alleged. ECF No. 22.

The parties thereafter attempted to settle the claim, but reached an impasse in August 2023. Status Report, ECF No. 28. They subsequently filed additional documents presenting their arguments related to entitlement. ECF Nos. 29-32. In his last filing, Respondent confirmed that his only objection to compensation related the onset Table requirement. Respondent's Response to Petitioner's Motion for Ruling on the Record at 5, 5 n.6 (stating "Respondent does not contest that [P]etitioner meets the remaining QAI for SIRVA"). The issue of entitlement is now ripe for adjudication.[3]

## II.    Finding of Fact Regarding Onset

At issue is whether Petitioner's first symptom or manifestation of onset after vaccine administration (specifically pain) occurred within 48 hours as set forth in the Vaccine Injury Table and Qualifications and Aids to Interpretation ("QAI") for a Table SIRVA. 42 C.F.R. § 100.3(a)XIV.B. (influenza vaccination); 42 C.F.R. § 100.3(c)(10)(ii) (required onset for pain listed in the QAI).

### A.    Authority

Pursuant to Vaccine Act Section 13(a)(1)(A), a petitioner must prove, by a preponderance of the evidence, the matters required in the petition by Vaccine Act Section 11(c)(1). A special master must consider, but is not bound by, any diagnosis,

---

[3] In her last filing, Petitioner also addressed the question of compensation, stating that she seeks $72,000.00 for her pain and suffering. ECF No. 32. Because all prior filings addressed only the issue of entitlement, I will allow the parties to provide further briefing before determining the appropriate pain and suffering award in this case. I will, however, briefly discuss my initial assessment regarding damages in this ruling. *See infra* Section IV.

2

conclusion, judgment, test result, report, or summary concerning the nature, causation, and aggravation of petitioner's injury or illness that is contained in a medical record. Section 13(b)(1). "Medical records, in general, warrant consideration as trustworthy evidence. The records contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions. With proper treatment hanging in the balance, accuracy has an extra premium. These records are also generally contemporaneous to the medical events." *Cucuras v. Sec'y of Health & Hum. Servs.*, 993 F.2d 1525, 1528 (Fed. Cir. 1993).

Accordingly, where medical records are clear, consistent, and complete, they should be afforded substantial weight. *Lowrie v. Sec'y of Health & Hum. Servs.*, No. 03-1585V, 2005 WL 6117475, at *20 (Fed. Cl. Spec. Mstr. Dec. 12, 2005). However, this rule does not always apply. "Written records which are, themselves, inconsistent, should be accorded less deference than those which are internally consistent." *Murphy v. Sec'y of Health & Hum. Servs.*, No. 90-882V, 1991 WL 74931, *4 (Fed. Cl. Spec. Mstr. April 25, 1991), quoted with approval in decision denying review, 23 Cl. Ct. 726, 733 (1991), *aff'd per curiam*, 968 F.2d 1226 (Fed.Cir.1992)). And the Federal Circuit recently "reject[ed] as incorrect the presumption that medical records are accurate and complete as to all the patient's physical conditions." *Kirby v. Sec'y of Health & Hum. Servs.*, 997 F.3d 1378, 1383 (Fed. Cir. 2021).

The United States Court of Federal Claims has outlined four possible explanations for inconsistencies between contemporaneously created medical records and later testimony: (1) a person's failure to recount to the medical professional everything that happened during the relevant time period; (2) the medical professional's failure to document everything reported to her or him; (3) a person's faulty recollection of the events when presenting testimony; or (4) a person's purposeful recounting of symptoms that did not exist. *La Londe v. Sec'y of Health & Hum. Servs.*, 110 Fed. Cl. 184, 203-04 (2013), *aff'd*, 746 F.3d 1335 (Fed. Cir. 2014).

The Court has also said that medical records may be outweighed by testimony that is given later in time that is "consistent, clear, cogent, and compelling." *Camery v. Sec'y of Health & Hum. Servs.*, 42 Fed. Cl. 381, 391 (1998) (citing *Blutstein v. Sec'y of Health & Hum. Servs.*, No. 90-2808, 1998 WL 408611, at *5 (Fed. Cl. Spec. Mstr. June 30, 1998). The credibility of the individual offering such fact testimony must also be determined. *Andreu v. Sec'y of Health & Hum. Servs.*, 569 F.3d 1367, 1379 (Fed. Cir. 2009); *Bradley v. Sec'y of Health & Hum. Servs.*, 991 F.2d 1570, 1575 (Fed. Cir. 1993).

A special master may find that the first symptom or manifestation of onset of an injury occurred "within the time period described in the Vaccine Injury Table even though

3

the occurrence of such symptom or manifestation was not recorded or was incorrectly recorded as having occurred outside such period." Section 13(b)(2). "Such a finding may be made only upon demonstration by a preponderance of the evidence that the onset [of the injury] . . . did in fact occur within the time period described in the Vaccine Injury Table." *Id.*

The special master is obligated to fully consider and compare the medical records, testimony, and all other "relevant and reliable evidence contained in the record." *La Londe*, 110 Fed. Cl. at 204 (citing Section 12(d)(3); Vaccine Rule 8); *see also Burns v. Sec'y of Health & Hum. Servs.*, 3 F.3d 415, 417 (Fed. Cir. 1993) (holding that it is within the special master's discretion to determine whether to afford greater weight to medical records or to other evidence, such as oral testimony surrounding the events in question that was given at a later date, provided that such determination is rational).

### B.    Analysis

I make the following onset finding after a complete review of the record to include all medical records, affidavits or declarations, and additional evidence filed. As the record shows:

- Approximately eleven months before receiving the 2020 flu vaccine alleged as causal (in late October 2019), Petitioner visited her current primary care provider ("PCP") expressing a desire to discuss recent events and to obtain a "full baseline check." Exhibit 1 at 15. It was noted that Petitioner "does not seek out medical care routinely" (*id.*), and the record indicates the visit was "to establish care" (*id.* at 18).

- During this PCP visit, Petitioner described a recent episode of mid-chest discomfort and mild numbness in her left arm (characterized as a chronic condition) after loading 600 pounds of corn into her truck. Exhibit 1 at 15. When listing her past symptoms over the last one to two years, she reported an earlier episode of chest discomfort, "intermittent neck pain, numbness of [her] upper left arm at times," and itching in her right armpit. *Id.* The PCP assessed Petitioner as having noncardiac-related chest pain, prescribed medication for acid reflux, and administered a flu vaccine. *Id.* at 9 (list of immunizations), 9-13 (testing), 17-18 (PCP's assessment and instructions).

- On October 5, 2020, Petitioner (then 62 years old) visited her PCP clinic for administration of the flu vaccine alleged as causal, and received it at that time. Exhibit 1 at 14; *see id.* at 9 (list of immunizations).

4

- On November 13th, Petitioner returned to her PCP complaining of left shoulder pain and limited range of motion ("ROM") which she attributed to the vaccination she received six weeks earlier.[4] Exhibit 1 at 19. She reported that her pain began "[f]airly abruptly" after vaccination, and that she believed the vaccine had been administered "higher than usual." *Id.* Stating that she preferred to avoid medications, Petitioner described difficulty sleeping, lifting her arm overhead or behind her back, and one episode of left shoulder numbness. *Id.*

- Encouraging Petitioner to apply ice and heat and to take over the counter pain medication, the PCP prescribed topical gel and physical therapy ("PT"). Exhibit 1 at 21. Although he noted that such injuries are rare, the PCP opined Petitioner was suffering from a "[p]ossible shoulder injury related to vaccination." *Id.*

- At her initial PT evaluation, Petitioner again reported left shoulder pain and limited ROM post-vaccination. Exhibit 8 at 10. Specially, she characterized her pain onset as "[s]udden" (*id.* at 9), providing an onset date of October 5, 2020 (*id.* at 6) - the date of her vaccination. Describing her pain as constant, Petitioner estimated her severity was initially four out of ten, but lessened to two out of ten after four weeks. *Id.* at 7.

- Petitioner continued to improve over the course of nine PT sessions in December 2020 to January 2021, but was directed to return to her PCP for further diagnostic testing after experiencing a few days of increasing pain prior to her last session on January 4th. Exhibit 8 at 16-17. At that time, it was noted that her pain ranged from two to seven. *Id.* at 16.

- When seen by her PCP the next day (January 5th), Petitioner again reported left shoulder pain after receiving a flu vaccine that was administered too high. Exhibit 1 at 22. In this record, it was noted that she "[c]orrelates onset to after receiving seasonal influenza vaccination." *Id.* After Petitioner shared a reluctance to use the prescribed gel due to a concern about its potential side effects (*id.*) and declined a steroid injection, the PCP referred her to an orthopedist and suggested acupuncture, if desired. *Id.* at 24.

- Petitioner was discharged from PT without receiving further treatment on February 11, 2021. Exhibit 8 at 8.

---

[4] Petitioner also described ongoing difficulties related to acid reflux. Exhibit 1 at 19-21.

5

- At her first acupuncture session on January 12th, Petitioner again reported left shoulder pain after receiving a flu vaccine three months earlier. Exhibit 3 at 1.

- By her fourth acupuncture session on January 22nd, Petitioner reported 50 percent improvement, even after shoveling snow. Exhibit 3 at 3. However, her pain had increased by her next session on January 24th, a change attributed to the use of a massage gun. *Id.* at 4.

- On March 10th, Petitioner began attending massage therapy. Exhibit 4 at 5. She again reported that her left shoulder pain was due to the vaccine she received, characterizing her injury as a "SIRVA – shoulder injury due to vaccine administration." *Id.* at 6.

- During her next PCP appointment (held telephonically on March 24th), Petitioner reported "[s]ome improvement in ROM but no change in pain." Exhibit 1 at 25. Noting that she had tried PT, Petitioner indicated she was attending acupuncture and had started massage therapy and yoga. She again declined a steroid injection, indicating she was "[t]errified of another injection." *Id.* The PCP ordered an MRI and prescribed pain medication and a muscle relaxant. Exhibit 1 at 26-27.

- When undergoing an MRI on April 8th, Petitioner again reported "[s]houlder pain following vaccination fall 2020." Exhibit 1 at 7. The MRI revealed "mild tendinosis of the supraspinatus and subscapularis tendons, [n]o rotator cuff tear, . . . [g]lenohumeral joint capsulitis, . . . [m]ild tendinosis of the long head biceps tendon, . . . [and] [m]ild degenerative arthrosis of the AC joint . . . [but] [n]o subacromial-subdeltoid bursal fluid." *Id.* at 7-8.

- Petitioner continued to attend acupuncture sessions throughout April, May, and early June 2021. Exhibit 5 at 3-22. She attended massage therapy until November 2021. Exhibit 6 at 4, 8-10.

- In her initial signed declaration, Petitioner described left shoulder pain onset immediately upon vaccination. Exhibit 2 at ¶ 8. She indicated that she believed the vaccine was given "much higher than any of [her] previous flu shots." *Id.*

6

- In her supplemental signed declaration, Petitioner maintains that the left shoulder pain she experienced after vaccination was different than her 2019 soreness. Exhibit 10 at ¶¶ 5-7, 9.

- In their signed statements, Petitioner's friends recalling observations and communications from Petitioner which support her claims of immediate pain onset. Exhibits 11 at ¶¶ 5-6; Exhibit 12 at ¶ 5.

The above medical records establish that when seeking treatment, Petitioner consistently described left shoulder pain that she attributed to a flu vaccine she received on October 5, 2020. Characterizing her pain as sudden and abrupt on at least one occasion, she provided the date of vaccination as the onset date for her pain. Petitioner provided these histories during the year following vaccination to her PCP, physical therapist, acupuncturist, massage therapist, and the technician performing her April 2021 MRI. And in both medical records and her first signed declaration, she described the flu vaccine as improperly administered – given too high in her left deltoid.

While originating from Petitioner, these statements are also set forth in contemporaneous records, and should therefore be afforded greater weight than any subsequent assertion or witness statement. The Federal Circuit has stated that "[m]edical records, in general, warrant consideration as trustworthy evidence . . . [as they] contain information supplied to or by health professionals to facilitate diagnosis and treatment of medical conditions." *Cucuras*, 993 F.2d at 1528 (emphasis added). Thus, the Circuit has instructed that greater weight should be accorded to this class of information, even when the record in question simply memorializes what the petitioner said at the time.

In addition, there is a dearth of evidence supporting a different pain onset. I thus determine, based on the entire record, that Petitioner has provided preponderant evidence establishing that her pain occurred within 48 hours of vaccination.

### III. Additional Requirements for Entitlement

#### A. Legal Standards

In addition to requirements concerning the vaccination received, the pain onset (discussed above in Section II), symptoms duration, and the lack of other award or settlement,[5] a petitioner must establish that she suffered an injury meeting the Table

---

[5] In summary, a petitioner must establish that he received a vaccine covered by the Program, administered either in the United States and its territories or in another geographical area but qualifying for a limited exception; suffered the residual effects of his injury for more than six months, died from his injury, or

7

criteria, in which case causation is presumed, or an injury shown to be caused-in-fact by the vaccination she received. Section 11(c)(1)(C).

The most recent version of the Table, which can be found at 42 C.F.R. § 100.3, identifies the vaccines covered under the Program, the corresponding injuries, and the time period in which the particular injuries must occur after vaccination. Section 14(a). Pursuant to the Vaccine Injury Table, a SIRVA is compensable if it manifests within 48 hours of the administration of a flu vaccine. 42 C.F. R. § 100.3(a)(VIX)(B). The criteria establishing a SIRVA under the accompanying QAI are as follows:

> Shoulder injury related to vaccine administration (SIRVA). SIRVA manifests as shoulder pain and limited range of motion occurring after the administration of a vaccine intended for intramuscular administration in the upper arm. These symptoms are thought to occur as a result of unintended injection of vaccine antigen or trauma from the needle into and around the underlying bursa of the shoulder resulting in an inflammatory reaction. SIRVA is caused by an injury to the musculoskeletal structures of the shoulder (e.g. tendons, ligaments, bursae, etc.). SIRVA is not a neurological injury and abnormalities on neurological examination or nerve conduction studies (NCS) and/or electromyographic (EMG) studies would not support SIRVA as a diagnosis (even if the condition causing the neurological abnormality is not known). A vaccine recipient shall be considered to have suffered SIRVA if such recipient manifests all of the following:
>
> (i) No history of pain, inflammation or dysfunction of the affected shoulder prior to intramuscular vaccine administration that would explain the alleged signs, symptoms, examination findings, and/or diagnostic studies occurring after vaccine injection;
>
> (ii) Pain occurs within the specified time frame;
>
> (iii) Pain and reduced range of motion are limited to the shoulder in which the intramuscular vaccine was administered; and
>
> (iv) No other condition or abnormality is present that would explain the patient's symptoms (e.g. NCS/EMG or clinical evidence of radiculopathy, brachial neuritis, mononeuropathies, or any other neuropathy).

---

underwent a surgical intervention during an inpatient hospitalization; and has not filed a civil suit or collected an award or settlement for her injury. *See* Section 11(c)(1)(A)(B)(D)(E).

42 C.F.R. § 100.3(c)(10).

### B. Analysis

Respondent has stated no further objections to compensation, and I find Petitioner has otherwise satisfied all criteria for a Table SIRVA injury following receipt of the flu vaccine. Although Petitioner experienced several instances of itching, numbness, and pain in her upper arm, as well as chest and neck, these episodes do prevent Petition from satisfying the QAI requirements related to a prior condition or alternative cause, especially considering Respondent's lack of objection. *See* 42 C.F.R. § 100.3(c)(10)(i), (iv) (first and fourth QAI criteria). And Petitioner exhibited pain and limitations in ROM solely in her left, injured shoulder. *E.g.,* Exhibit 1 at 20, 23 (PCP visits); Exhibit 6 at 8-10 (acupuncture records); Exhibit 8 at 5, 8, 16-17 (PT records); *see* 42 C.F.R. § 100.3(c)(10)(iii) (third QAI criterion).

As I have determined in this ruling, the record supports a finding that Petitioner suffered pain within 48 hours of vaccination. *See supra* Section II.B.; 42 C.F.R. § 100.3(c)(10)(ii) (second QAI criterion). Additionally, the medical records show Petitioner suffered the residual effects of her injury for more than six-months. Exhibit 1 at 7-8 (MRI performed on March 8, 2021), 25-27 (March 24, 2021 PCP vists); *see* Section 11(c)(1)(D)(i) (six-month severity requirement). And the vaccine record shows Petitioner received the flu vaccine at her PCP's clinic in Chanhassen, Minnesota. Exhibit 1 at 9, 14; *see* Section 11(c)(1)(A) (requiring receipt of a covered vaccine); Section 11(c)(1)(B)(i) (requiring administration within the United States or its territories). Furthermore, there is no evidence that Petitioner has collected a civil award for his injury. *See* Section 11(c)(1)(E) (lack of prior civil award). Thus, Petitioner has satisfied all requirements for entitlement under the Vaccine Act.

### IV. Appropriate Amount of Compensation

Although I have found Petitioner entitled to compensation, I do not expect the amount awarded for Petitioner's past pain and suffering to be significant. Throughout the medical records, Petitioner reported moderate pain levels (from two to seven). And she did not seek treatment initially until more than a month post-vaccination. Although her pain increased again in early January 2021, Petitioner received some relief from PT sessions in December 2020. In 2021, Petitioner declined two offers of a steroid injection from her PCP, preferring to treat her symptoms using acupuncture and massage therapy. And there is some evidence in these records showing her symptoms were aggravated by her continued physical activity, and included pain in other areas that appear unrelated to

her SIRVA. *See,* e.g., Exhibit 5 at 3-4 (describing back and arm pain after weeding and muscle tension primarily in her trapezius). In attempting to resolve damages, the parties should keep in mind that this does not appear to be a case in which a significant pain and suffering award is warranted.

## Conclusion

**Based on the entire record in this case, I find that Petitioner has provided preponderant evidence satisfying all requirements for a Table SIRVA. Petitioner is entitled to compensation in this case.**

**IT IS SO ORDERED.**

**s/Brian H. Corcoran**
Brian H. Corcoran
Chief Special Master
